**AMERICAN CONVEYOR CORPORATION,** Plaintiff,

v.

**MUNICIPALITY OF GUANICA, et al., Defendants.**

**Civ. No. 84–2621(PG).**

United States District Court, D. Puerto Rico.

July 18, 1985.

Goldman & Antonetti, Santurce, P.R., for plaintiff.

Doris Hernandez Diaz, Dept. of Justice, Federal Litigation Div., San Juan, P.R., for defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, Chief Judge.

Present before the Court is co-defendants Municipal Services Administration (MSA) and Emilio Ortiz Colón's, in his capacity as Administrator of MSA, motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction or in the alternative for summary judgment. Plaintiff filed its opposition thereto.

American Conveyor Corporation (Conveyor) brought this action for declaratory, injunctive relief and money damages for the alleged violation of plaintiff's rights under the Constitution and laws of the United States and Puerto Rico. The plaintiff's claims are brought under the Declaratory Judgment Act, 28 U.S.C. § 2201; the Civil Rights Act, 42 U.S.C. § 1983; and Title I of the Housing and Community Development Act of 1974, 42 U.S.C. § 5301, et seq. Jurisdiction is predicated on 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1343(a)(3) and (4) (civil rights); and 28 U.S.C. § 1332 (diversity of citizenship).

On or about July 20, 1984, co-defendant Board of Awards of the Municpality of Guánica[1] (Board of Awards) awarded co-defendant Intendance of International Consultants, Inc.,[2] (Intendance) the construction of a packing house for vegetables and fruits and the construction of an irrigation drip system. The plaintiff alleges that this contract for the construction of the packing house should have been awarded to it and the contract for the construction of the drip irrigation system should have been awarded to Netafin Irrigation, Inc.,[3] rather than to Intendance because they submitted lower responsible bids.

The first cause of action of the complaint states that the arbitrary and capricious decision to award the contracts to Intendance violated the due process and equal protection clauses of the United States Constitution and the Constitution of Puerto Rico, as well as the state laws.

In the second cause of action plaintiff prays for injunctive relief because it contends that there is no adequate remedy at law.

As a third cause of action plaintiff alleges that the acts of defendants Municipality of Guánica, (Guánica) the Board of Awards and the Honorable Ludovino Garcia Salcedo, in his capacity as Mayor of Guanica, having taken place under color of law, violated plaintiff's rights under 42 U.S.C. § 1983.

---

1. The Board of Awards, which is composed of no less than three municipal officials appointed by the Mayor, who shall be its Chairman, is in charge of awarding all bids for public construction or improvement that exceeds $40,000. 21 L.P.R.A. §§ 3251, 3253.

2. Intendance is alleged in the complaint to be a private corporation doing business in Puerto Rico.

3. Netafin Irrigation, Inc., is not a party in this case.

Defendants MSA and its Administrator, Emilio Ortiz Colón, are included as parties in the complaint because "[s]aid administrative body is the disbursing agency for federal funds made available under Title I of the Housing and Community Development Act of 1974; and has the responbility to disburse such funds in accordance with said Act and regulations and in the exercise of such functions to protect the interests of the United States in the valid *disbursements* and utilization of those funds." (Complaint par. 40).

Defendants allege that there is no diversity jurisdiction because co-defendants are really the Commonwealth of Puerto Rico and a state cannot be a citizen for diversity purposes.

 If the defendant is a municipality, municipal agent, or an officer thereof, the general rule is that the Eleventh Amendment to the United States Constitution will not bar the action since these entities are not considered arms of the state. 13 Wright, Miller & Cooper, *Federal Practice and Procedure:* Jurisdiction 2d, § 3524, at 130. Defendants have failed to establish that MSA and its administrator are an alter ego of the Commonwealth of Puerto Rico. The independence or alter ego status of a political subdivision of a state is determined by examining state law. Wright, Miller & Cooper, *Federal Practice and Procedure:* Jurisdiction 2d, § 3602, at 369–370. The law that creates a municipality in Puerto Rico provides that it has a legal existence and personality separate and independent from the Government of the Commonwealth of Puerto Rico. 21 L.P.R.A. § 2051. Among the general powers that a municipality shall have is the power to sue and be sued, charge and be charged,

file complaints and defend itself in the courts of justice and in the administrative bodies. 21 L.P.R.A. § 2054. A municipality that is independent in character and functions from the state may be considered a "citizen" for purposes of diversity jurisdiction. *Reeves v. City of Jackson,* 532 F.2d 491 (5th Cir.1976). Thus, MSA and its administrator, Mr. Ortiz Colón, are considered citizens within the meaning of the diversity of citizenship statute. 28 U.S.C. § 1332.

Defendants also contend that plaintiff is barred from seeking injunctive relief because it did not exhaust the state's administrative and judicial remedies.

 A court will generally refuse to grant injunctive relief unless plaintiff shows that he does not have an adequate legal remedy[4] or that he has exhausted any available administrative remedies. 11 Wright & Miller, *Federal Practice and Procedure:* Civil § 2944. Before challenging a state action in federal court a litigant must normally exhaust "legislative" or "administrative" remedies. 17 Wright, Miller & Cooper, *Federal Practice and Procedure:* Jurisdiction § 4233, at 371. However, said litigant need not normally exhaust state "judicial" remedies. *Id.,* at 371–372.

Section 3402(a) of Title 21, L.P.R.A., confers on any aggrieved party the right within 20 days to bring an action in the Superior Court of Puerto Rico against the Assembly, the Board of Awards, the Mayor or any municipal official to review or annul any legislative or administrative action which infringes the constitutional rights of the complainants or which is contrary to the laws of Puerto Rico. Section 3402(b)

---

**4.** What constitutes an adequate legal remedy depends on the facts of each case. If plaintiff either can bring a legal action and seek damages that will compensate him fully, the alternative remedy is adequate. 11 Wright & Miller, *Federal Practice and Procedure:* Civil § 2944, at 396. In the present case, plaintiff cannot bring an action to stay the execution·of the decision or resolution of the Assembly, Board of Awards, the Mayor or any municipal official, nor can it bring an action to review or annul the adminis-

trative action because plaintiff did not prosecute the judicial action within the first twenty days from the date on which the administrative act has been performed or from the date on which the resolution or decision has been promulgated or communicated to the plaintiff.

Furthermore, plaintiff cannot bring a claim against a municipality for damages caused by its fault or negligence because it did not give the municipal executive a written notice within the term prescribed. 21 L.P.R.A. § 3403.

confers on any party aggrieved the right to bring a judicial action to stay the execution of any resolution or order of the Assembly, the Board of Awards, the Mayor, or any municipal official within 20 days from the date when it has been promulgated or communicated to the complainant. The function of the Superior Court of Puerto Rico under the statutory mandate is judicial, to stay the execution of any ordinance or decision, resolution or order of the Assembly, the Board of Awards, the Mayor or any municipal officer, or to review or annul any legislative or administrative action if violative of rights guaranteed by the Constitution or bylaws of the Commonwealth of Puerto Rico. *See, e.g., Porter v. Investors Syndicate*, 286 U.S. 461, 468, 52 S.Ct. 617, 619, 76 L.Ed. 1226 (1931).

■ Furthermore, when federal claims are premised on 42 U.S.C. § 1983 and 28 U.S.C. § 1343(a)(3) there is no need to exhaust state judicial or administrative remedies. *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).

Plaintiff's opposition to MSA and Ortiz Colón's motion to dismiss or in the alternative for summary judgment, filed on January 8, 1985, is almost identical to plaintiff's opposition to co-defendants Guánica, Intendance, Garcia Salcedo and the Board of Awards' motion for summary judgment.

In view that the same legal issues are raised in both motions and oppositions they will be decided in one opinion and order.

Co-defendants Guánica, Intendance, Ludovino Garcia Salcedo, in his capacity of Mayor of Guánica, and the Board of Awards filed on December 13, 1984, a motion for summary judgment. Co-defendants request the Court to dismiss the complaint because it is time barred. Plaintiff filed its opposition thereto on January 8, 1985.

After examining the pleadings, their annexed exhibits and supporting affidavits, in the light most favorable to plaintiff, the record in this case now reveals no genuine issue of material fact and that defendants are entitled to judgment as a matter of law.

## Findings of Fact

1. On June 1984 co-defendant Guánica let out an invitation to bid on certain contracts for the construction of a packing plant for vegetables and fruits and for the construction of an irrigation drip system.

2. Plaintiff, Conveyor, bid only with respect to the packing plant.

3. Co-defendant Intendance made a combined bid on both projects.

4. Guánica awarded a contract for both projects to Intendance on July 30, 1984. Conveyor was notified on August 8th of Guánica's decision.

5. On August 13th Conveyor sent a letter to Guánica protesting the award to Intendance.

6. Guánica never answered the letter and Conveyor did nothing else relative to its protest until filing the present complaint on October 18, 1984. (See affidavit of Mr. Ludovino Garcia Salcedo, former Mayor of Guánica and former member of the Board of Awards of Guánica.)

## Conclusions of Law

Co-defendants, assuming that plaintiff pled the first two causes of action under the diversity statute, contend that the Puerto Rico substantive law prevails and, thus, the first two causes of action are barred by the statute of limitations contained in 21 L.P.R.A. § 3402. They further contend that the third cause of action, which relies on 42 U.S.C. § 1983, is also time barred because it incorporates by reference all material paragraphs of the first cause of action; and, therefore, the "most analogous" statute to the third cause of action is 21 L.P.R.A. § 3402.

Plaintiff alleges that its claims for monetary, declaratory and injunctive relief are based principally on 42 U.S.C. § 5301, et seq. (Title I of the Housing and Community Development Act of 1974), 42 U.S.C. § 1983 (Civil Rights Act) and the due process clause of the 5th and 14th Amendments to the United States Constitution. Jurisdiction is invoked pursuant to 28

U.S.C. § 1331 (Federal Question), 28 U.S.C. § 1343(a)(3), (4) (Civil Rights and Elective Franchise), and 28 U.S.C. § 1332 (Diversity of Citizenship).

Plaintiff argues that its claims under the first and second causes of action of the complaint arise under Title I of the Housing and Community Development Act of 1974 and that this Court has jurisdiction to hear and decide such claims under the federal question statute, 28 U.S.C. § 1331. Therefore, it alleges that the first and second causes of action are not time barred since Puerto Rico's substantive law does not control.

One of the underlying issues presented in this case is whether the Community Development Act provides plaintiff with a private cause of action for monetary, declaratory and injunctive relief against the Municipality of Guánica and the other defendants.

█ Private parties can bring an action upon a statute which does not expressly authorize a private lawsuit. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). The four factors that should be considered in determining whether a plaintiff may bring a private action are:

1. Is the plaintiff one of the class for whose special benefit the statute was enacted?

2. Is there any indication of legislative intent, explicit or implicit, either to create such a remedy or deny one?

3. Is it consistent with the underlining purpose of the legislative schemes to imply such a remedy for the plaintiff?

4. Is the cause of action one traditionally relegated to state law, in an area basically the concern of the states, so that it would be inappropriate to infer a cause of action based solely on federal law? *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

We now apply the *Cort v. Ash* factors to the present case. Only three of the four *Cort v. Ash* factors are pertinent. The fourth factor which inquires into whether the cause of action "is traditionally relegated to state law," 422 U.S. at 78, 95 S.Ct. at 2088, does not arise in respect to a federal housing statute whose purpose is to generate federal funds and administer their expenditures. *People's Hous. Develop. Corp. v. City of Poughkeepsie*, 425 F.Supp. 482, 490–91 (S.D.N.Y.1976).

█ The answer to each of the three questions is in the negative. Plaintiff is not a member of the class especially benefited by the Housing and Community Development Act. Congress did not intend to create a private right of action for disappointed bidders.

The Act's declared purpose evinces no concern on Congress' part to protect unsuccessful bidders. The Congressional findings and declaration of purpose of the Act are the following:

(a) Critical social, economic, and environmental problems facing Nation's urban communities

The Congress finds and declares that the Nation's cities, towns, and smaller urban communities face critical social, economic, and environmental problems arising in significant measure from—

(1) the growth of population in metropolitan and other urban areas, and the concentration of persons of lower income in central cities;

(2) inadequate public and private investment and reinvestment in housing and other physical facilities, and related public and social services, resulting in the growth and persistence of urban slums and blight and the marked deterioration of the quality of the urban environment; and

(3) increasing energy costs which have seriously undermined the quality and overall effectiveness of local community and housing development activities.

(b) Establishment and maintenance of viable urban communities; systematic and sustained action by Federal, State, and local governments; expansion of and continuity in Federal assistance; increased private investment; streamlining

928

programs and improvement of functioning of agencies; action to address consequences of scarce fuel supplies

The Congress further finds and declares that the future welfare of the Nation and the well-being of its citizens depend on the establishment and maintenance of viable urban communities as social, economic, and political entities, and require—

(1) systematic and sustained action by Federal, State, and local governments to eliminate blight, to conserve and renew older urban areas, to imporve the living environment of low-and moderate-income families, and to develop new centers of population growth and economic activity;

(2) substantial expansion of and greater continuity in the scope and level of Federal assistance, together with increased private investment in support of community development activities;

(3) continuing effort at all levels of government to streamline programs and improve the functioning of agencies responsible for planning, implementing, and evaluating community development efforts; and

(4) concerted action by Federal, State, and local governments to address the economic and social hardships borne by communities as a consequence of scarce fuel supplies.

42 U.S.C. § 5301.

The primary objective of the Act is "the development of viable urban communities, by providing decent housing and a suitable living environment and expanding economic opportunities, principally for persons of low and moderate income." 42 U.S.C. § 5301(c); *Aertsen v. Landrieu*, 637 F.2d 12, 22 (1st Cir.1980). The statute consists of a new system of federal assistance under HUD's administration and consolidates the previous grant-in-aid efforts into a simple block grant program. The block grant approach was chosen by the drafters "primarily to insure that federal funds would be used with a priority to eliminate slums and blight and to upgrade and make the nation's cities more livable, attractive and viable places in which to live." *Montgomery Improvement Ass'n. v. U.S. Dept. of H.U.D.*, 645 F.2d 291, 293 (5th Cir.1981), *quoting*, U.S.Code Cong.Admin.News, at 4273, 4274 (1974).

It would be inconsistent with the statutory purpose and scheme of the Act to allow a private right of action for disappointed bidders.

Conveyor contends that it falls within the purview of the Community Development Act's class of beneficiaries because it represents the public's interest.[5] Therefore, Conveyor alleges it will be acting as a private attorney general. In support of its proposition Conveyor cites and quotes from *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859 (D.C.Cir.1970), where a disappointed second low bidder for a government contract was found to have standing to seek judicial review of a contract awarded to a competing bidder.

■ In *Scanwell Laboratories, Inc., supra*, plaintiff was granted standing to challenge a federal agency action under the Administrative Procedure Act (APA), 5 U.S.C. § 701, et seq. Conveyor does not have a right of action against the municipality, its agencies and officials under APA because they are not a federal agency within the meaning of the Act. *See*, 7 U.S.C. § 701(h)(1); *City of Rohnert Park v. Harris*, 601 F.2d 1040, 1048 (9th Cir.1979) (APA does not create right of action against city urban renewal agency participating in federal urban renewal project); *Gibson & Perin Co. v. City of Cincinnati*, 480 F.2d

---

5. Conveyor alleges that just as it has been held by the federal court that the beneficiaries of the Community Development Act's funds claiming violations of the antidiscriminatory provisions of said Act have an implied cause of action, it too falls within the purview of the Community Development Act's class of beneficiaries. However, the comparison falls flat on its face for the Community Development Act grants persons of "low and moderate income" certain rights and expressly forbids discrimination or exclusion from benefits based on race, color, national origin or sex. 42 U.S.C. § 5309(a); *People's Housing Development Corp. v. City of Poughkeepsie*, 425 F.Supp. 482 (D.C.N.Y.1976).

936, 941 (6th Cir.), *cert. denied,* 414 U.S. 1068, 94 S.Ct. 577, 38 L.Ed.2d 473 (1973) (same rule with respect to city itself); *Muñoz Mendoza v. Pierce,* 711 F.2d 421, 425 (1st Cir.1983); *Window Systems v. Manchester Memorial Hospital,* 424 F.Supp. 331, 336 (D.Conn.1976); *St. Michael's Convalescent v. State of Cal.,* 643 F.2d 1369 (9th Cir.1981); *Sovereign Const. Co. Ltd. v. City of Philadelphia,* 439 F.Supp. 692 (E.D.Pa.1977). Federal funding does not subject the defendants to the provisions of the APA. Extensive federal regulations do not convert acts of local and state governmental bodies into federal governmental acts. *United States v. Orleans,* 425 U.S. 807, 816, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976); *Forsham v. Harris,* 445 U.S. 169, 100 S.Ct. 977, 63 L.Ed.2d 293 (1980) ("Extensive, detailed and virtually day to day supervision" by the federal government is needed before 'agency' status could be said to attach).

Standing to sue as "private attorney general" rests on an explicit provision in the regulatory statute confering standing, which is absent here. *Gibson & Perin Co. v. City of Cincinnati,* 480 F.2d 936 (6th Cir.1973), *citing, Data Processing Service v. Camp,* 397 U.S. 150, 153 n. 1, 90 S.Ct. 827, 829 n. 1, 25 L.Ed.2d 184 (1970). The Seventh Circuit, nor do we believe the First Circuit, has ever recognized standing for a plaintiff based solely on private attorney general status. *See, People Gas, Light & Coke Co. v. U.S. Postal Serv.,* 658 F.2d 1182, 1200 (7th Cir.1981) (plaintiff claimed that it was within the protected zone of interest because an injury-in-fact coupled with the public interest served to confer standing upon it as a "private attorney general" to assert the interests of the public in postal service compliance with its statutory charges and regulations); *Muñoz Mendoza, supra* (the requirement to be within the zone of interest to be protected or regulated by the statute or constitutional guarantee in question is excused only in unusual circumstances, such as when Congress has enacted a special "person aggrieved" statute, allowing a plaintiff to act as a "private attorney general", or where a special, e.g., a constitutional reason, exists for allowing one person to assert the interest of another).

A constitutional reason has not been shown to exist for allowing Conveyor to assert the interest of the public in the compliance with the regulatory scheme of the Housing and Community Development Act of 1974.

Plaintiff must assert an interest of its own that is arguably protected by the Housing and Community Development Act of 1974. "The assertion of private attorney general status based solely on injury in fact is insufficient for standing." *Cf., Committee for Auto Responsibility v. Solomon,* 603 F.2d 992, 999, n. 22 (D.C.Cir. 1979), and cases cited therein. ("A party will be denied standing if his alleged injury is to an interest that is not arguably within the zone of interests protected by the statute in question, even though injury in fact has been sufficiently established.")

■ Plaintiff's argument that plaintiffs stand as private attorney generals is precluded by the Court's finding that plaintiff is not within the zone of interest intended to be protected by the Housing and Community Development Act of 1974.

An alternative argument alleged by plaintiff is that if the Court determines that plaintiff does not have an implied cause of action under the Community Development Act, that there exists diversity jurisdiction. Plaintiff accepts that the prescriptive term contained in 21 L.P.R.A. § 3402[6] is applicable to the first and second

---

6. 21 L.P.R.A. § 3402 provides in pertinent part: The Supreme Court of Puerto Rico shall have exclusive jurisdiction to take cognizance of and resolve the following matters by request of the aggrieved party.

(a) To review or annul any legislative or administrative action of the Assembly, the Board of Awards, the Mayor or any municipal official who infringes the constitutional rights of the complainants or which is contrary to the laws of Puerto Rico.

(b) To stay the execution of any ordinance, decision, resolution or order of the Assembly, the Board of Awards, the Mayor or any mu-

causes of action. Conveyor contends, however, that it has been deprived of property[7] and liberty without due process in violation of the Fifth Amendment to the United States Constitution. Said deprivation consists in the denial by Guánica and its agents of a post-bid meeting which allegedly thwarted plaintiff's efforts to recur to state judicial action because it did not have the necesary information to file the same within the twenty-day period required in 21 L.P.R.A. § 3402. These same allegations form part of plaintiff's third cause of action, which is premised on 42 U.S.C. § 1983.

To maintain a cause of action under Section 1983 a plaintiff must plead and prove: 1) that he has been deprived of a right, privilege or immunity secured by the constitution, laws or treaties of the United States; 2) that the defendants subjected plaintiff to this deprivation or caused him to be so subjected; and 3) that the defendants acted under color of any statute, ordinance, regulation, custom or usage of any state.[8]

We must first determine whether the plaintiff has demonstrated that defendants have deprived it of property or liberty[9] without according it the procedural protection required by the due process clause. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In order to determine this we must first answer the threshold question, to wit: whether the interest claimed by plaintiff is a property interest protected by the Consti-

tution. In order to have a property interest in a government benefit, whether it be a job or a public works contract, the party making the claim must show that it has a legitimate claim of entitlement. *Board of Regents, supra,* at 577, 92 S.Ct. at 2709. Whether or not claimant has such an entitlement to the benefit is to be decided by reference to state law. *J.P. Mascaró & Son, Inc. v. Township of Bristol,* 497 F.Supp. 625, 627 (E.D.Pa.1980), *citing, Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Rosenthal v. Rizzo,* 555 F.2d 390, 392 (3rd Cir.), *cert. denied,* 434 U.S. 892, 98 S.Ct. 268, 54 L.Ed.2d 178 (1977). *See also, Coyne-Delany Co. v. Development Bd.,* 616 F.2d 341 (7th Cir.1980); *Cincinnati Electronics Corp. v. Kleppe,* 509 F.2d 1080, 1083 (6th Cir.1975). We now turn to the law of Puerto Rico to see what rights does it confer on bidders.

21 L.P.R.A. § 3253 provides:

(a) Every municipality must have a Board of Awards composed of no less than three (3) municipal officials appointed by the Mayor, who shall be its Chairman....

(c) The Board shall make an award to the lowest reasonable bidder when it involves purchases, construction or supplying of services, and to the highest bidder when it involves sales or leases, taking into consideration that the bids conform to specifications, delivery terms, the ability of the bidder to fulfill and comply

nicipal official, which infringes the rights guaranteed by the Constitution of the Commonwealth of Puerto Rico or by the laws of the Commonwealth....

In the first two cases the judicial action may only be prosecuted within the first twenty days from the date on which the legislative or administrative act has been performed, or the ordinance, resolution, decision or order has been promulgated or communicated to the complainant, unless otherwise provided by law.

**7.** The property interest alleged is the one that arises from plaintiff's status as the lowest reasonable bidder for the packing house construction project.

**8.** In order for private persons to be held liable under Section 1983 the plaintiff must show that the private defendants conspired with public

officials to deprive plaintiff of his constitutional rights. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Talley v. Crosson,* 663 F.2d 713 (7th Cir.1981), *cert. denied,* 460 U.S. 1037, 103 S.Ct. 1426, 75 L.Ed.2d 787; *Sykes v. State of California Dept. of Motor Vehicles,* 497 F.2d 197 (9th Cir.1974). Plaintiff fails to make such a showing as to Intendance, a private corporation. There is not a single allegation in the complaint as to Intendance being a willfull participant in joint activity with Guánica or its agents.

**9.** Although plaintiff always adds "liberty interest," it does not state how defendants deprived it of a liberty interest.

with the contract, financial responsibility of the bidder, business standing and integrity, and other conditions included in the bidding form; provided, that the Board may award a bid to a bidder who may not necessarily be the lowest or the highest bidder, as the case may be, if the public interest is benefited therewith.

■ Plaintiff contends that since it was the lowest monetary bidder, defendant Board of Awards was required to award it the construction contract as required by 21 L.P.R.A. § 3253(c). In *Great Am. Indem. Co. v. Gov't of the Capital*, 59 P.R.R. 903 (1942), the Supreme Court of Puerto Rico established that when there are many factors to which the Administrative Board might give considerable weight in carrying out the mandate of the statute in awarding a contract on public call for bids, no inflexible rule that the contract must be awarded to the lowest bidder can be laid down. The Supreme Court of Puerto Rico held that "[i]n the absence of fraud, bad faith or an abuse of discretion, no bidder is entitled to complain when another bid is selected as the most advantageous. The question must be decided in the light of the public interest, and *no bidder has a vested right in any award.*" (Emphasis ours) *Id.,* at 908.

Since there is no property interest in dissapointed bidders, no hearing of any type was required by the due process clause of the United States Constitution. *See, e.g., ARA Services, Inc. v. School Dist. of Philadelphia,* 590 F.Supp. 622 (E.D.Pa.1984).

■ Plaintiff also claims that the actions of the defendants deprived it of equal protection of the laws, in violation of the Fourteenth Amendment. To a same claim raised by a dissapointed low bidder, in *ARA Services, Inc., supra,* the court stated at 629:

The function of the equal protection clause "is to measure the validity of classifications created by state laws." *Parham v. Hughes,* 441 U.S. 347, 358, 99 S.Ct. 1742, 1749, 60 L.Ed.2d 269 (1979). Since the plaintiffs have not alleged that the defendants have infringed upon a fundamental right or discriminated against a suspect class, their equal protection challenge can succeed only if they show the existence of a legislative classification not rationally related to legitimate public ends. *Murillo v. Bambrick,* 681 F.2d 898, 901 (3d Cir.), *cert. denied,* 459 U.S. 1017, 103 S.Ct. 378, 74 L.Ed.2d 511 (1982).

In evaluating an equal protection claim under the rational relation test, the first task is to "identify with particularity the precise classification alleged to be irrational." *Murillo,* 681 F.2d at 906. In its brief in opposition to defendant's motion to dismiss, plaintiff does not identify the classification alleged to be irrational. Assuming arguendo that it is the class of lowest responsible bidders who receive the contracts to which they are entitled under state law and the class of lowest responsible bidders who, through no fault of their own, are denied the contracts to which they are entitled, at most what plaintiff claims amounts to an allegation that state law was missapplied in an individual case.[10] The Supreme Court has made clear that the misapplication of state law alone does not constitute invidious discrimination in violation of the equal protection clause. *Beck v. Washington,* 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962). The court in *ARA Services, Inc., supra,* did not find in the equal protection clause the authority to review for constitutional error a decision of a local or state governmental body merely because the decision was alleged to be arbitrary or unlawful. *See also, Coyne-Delany Co. v.*

10. In *Ortega Cabrera v. Municipality of Bayamón,* 562 F.2d 91 (1st Cir.1977) the First Circuit Court of Appeals rejected plaintiff's position that a federal constitutional violation follows necessarily from the fact that the individual defendants authorized municipal actions that were contrary to state law. The Court stated at

102: "The illegality of official conduct under local law 'can neither add to nor substract from its constitutional validity.' *Snowden v. Hughes,* 321 U.S. 1, 11, 64 S.Ct. 397, 402, 88 L.Ed. 497 (1944). A violation of a federal constitutional provision must be shown."

*Capital Development Bd.*, 616 F.2d 341 (7th Cir.1980). Plaintiff has failed to state a claim for violation of the equal protection clause of the Fourteenth Amendment.[11]

In conclusion, plaintiff's claims for monetary, declaratory and injunctive relief based on the Housing and Community Development Act of 1974 must be dismissed for Conveyor does not have a private cause of action under the same. Plaintiff's civil rights claim must also be dismissed because plaintiff failed to prove any deprivation of a right, privilege or immunity secured by the Constitution or laws of the United States. Furthermore, under the diversity of citizenship statute plaintiff's claims are time barred under 21 L.P.R.A. § 3402.

WHEREFORE, in view of the above, the Court hereby ORDERS THE DISMISSAL of the complaint as to all of the defendants. Judgment shall be entered accordingly.

IT IS SO ORDERED.

---

**11.** Due to the fact that plaintiff has failed to prove that it has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States, it is not necessary to determine which is the state statute "most analogous" to the alleged civil rights cause of action to determine the statute of limitation to be applied.